

WENDELIN I. LIPP
U. S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | * | |
| | | |
| MITCHELL ALAN STEIN, | * | Case No. 05-36427-WIL |
| a/k/a H.B. STEIN LIMITED, | | Chapter 7 |
| a/k/a AMERICAN HEARING | * | |
|     CENTERS, INC., | | |
| a/k/a AMERICAN HEARING CENTERS, | * | |
| | | |
|     Debtor. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| CONSUMER PROTECTION | * | |
| DIVISION, OFFICE OF THE | | |
| ATTORNEY GENERAL, STATE | * | |
| OF MARYLAND, | | |
| | * | |
|     Plaintiff, | | |
| | * | |
| v. | | Adversary No. 06-01083-WIL |
| | * | |
| MITCHELL ALAN STEIN, | | |
| a/k/a H.B. STEIN LIMITED, | * | |
| a/k/a AMERICAN HEARING | | |
|     CENTERS, INC., | * | |
| a/k/a AMERICAN HEARING CENTERS, | | |
| | * | |
|     Defendant. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OF DECISION GRANTING MOTION OF**
**CONSUMER PROTECTION DIVISION FOR SUMMARY JUDGMENT [6]**

On January 20, 2006, Plaintiff, the Consumer Protection Division of the Office of the Attorney General for the State of Maryland (the "Plaintiff"), filed a Complaint [1] against Mitchell Alan Stein (the "Debtor"). In the Complaint, the Plaintiff seeks a determination that certain debts owed by the Debtor for restitution and civil penalties against him, and other relief afforded by the Assurance of Discontinuance (the "Agreement") executed by the parties in connection with violations of the Maryland Consumer Protection Act, are not dischargeable pursuant to 11 U.S.C. § 523(a)(7). The Debtor filed an Answer and Counterclaim [4][1] against the Plaintiff on February 17, 2006. The Scheduling Order [9] in this case was entered on April 12, 2006. Trial is scheduled for October 6, 2006.

On March 13, 2006, the Plaintiff filed a Motion for Summary Judgment [6] (the "Motion"). The Debtor did not file a response. The Court has reviewed the pleadings and the record in this case and finds that the Motion will be granted.

**Standard for Granting Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure (made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure) provides:

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. Proc. 56(c).

---

[1]    The Plaintiff filed a Motion to Dismiss Counterclaim [5] on March 7, 2006. The Counterclaim and Motion to Dismiss are the subject of a separate Order.

The Rule further provides:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment *if appropriate*, shall be entered against the adverse party."

Fed. R. Civ. Proc. 56(e) (emphasis added).

One of the principal purposes of summary judgment is to isolate and dispose of all factually unsupported claims or defenses. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). To that end, the Court considers all evidence in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986) (all justifiable inferences are drawn in the nonmovant's favor). The mere existence of an alleged factual dispute does not defeat a motion for summary judgment; rather the standard requires that there be no genuine issue of *material* fact. *Id*. at 247-48. Only disputes over the facts that might affect the outcome of the lawsuit under applicable law will preclude entry of summary judgment. *Id*. Therefore, once a motion for summary judgment is made and supported as provided in the Rule, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. Proc. 56(e). The nonmovant may rely on any evidentiary materials listed in Rule 56(c), except the motions themselves. *Celotex,* 477 U.S. at 325. If reasonable minds could differ as to the import of the evidence, summary judgment should not be granted. *Liberty Lobby, Inc.*, 477 U.S. at 248.

## Facts

The following facts are not in dispute: the Debtor operated a business in Maryland known as American Hearing Centers, Inc. that was engaged in the business of dispensing hearing aids and other related goods and services to consumers.  In connection with that business, the Plaintiff asserted claims against the Debtor for various violations of the Maryland Consumer Protection Act, Md. Comm. Code Ann. §13-101, *et seq*., including that he failed to refund overpayments to consumers who lawfully returned their hearing aids, and he collected double payments from consumers and their insurance companies and then failed to refund payments to the consumers.

These claims were resolved on June 7, 2005, when the Plaintiff and the Debtor executed the Agreement.  The Agreement was attached to the Motion as Exhibit A.  In addition to cease and desist provisions, the Agreement contained penalties, restitution and costs, including: (1) $20,000 surety bond to be posted with the Plaintiff if the Debtor  continued in the business of selling hearing aids to consumers in Maryland; or (2) $20,000 letter of credit or cash deposit to be held by the Plaintiff against which consumers or the Plaintiff could file claims; and (3) $20,000 civil penalty.  In addition, the Agreement required the Debtor to pay restitution in an amount equal to: "(a) all monies American Hearing Centers, Inc. collected from consumers who returned their hearing aid(s) and/or notified American Hearing Centers, Inc. of a cancellation, less any amount already refunded to such consumers, plus; (b) for all consumers with insurance policies that allowed American Hearing Centers, Inc. to charge the consumer the difference between the amount of insurance payment(s) and American Hearing Centers, Inc.'s charge for goods and services, the amount that American Hearing Centers, Inc. has received from such consumers that exceeds that difference, plus; (c) for all consumers covered by an HMO that

provided coverage for hearing aids and related services, the amount that American Hearing Centers, Inc. received from such consumers, other than an applicable co-pay or deductible, plus; (d) for all consumers covered by an insurance policy that provided that American Hearing Centers, Inc. must accept the insurance payment as payment in full, the amount of all payments from such consumers that exceeded the co-pay or deductible for which the consumer was responsible." *See* Agreement, ¶ 15. Finally, the Agreement provided for the Debtor to pay $1,000 in costs that the Plaintiff concedes is dischargeable in the Debtor's bankruptcy case.

Attached to the Agreement was a list of seven individuals and the refund amount owed to them in the aggregate amount of $20,108.70. The parties agreed that this list was not exhaustive and that the Debtor would cooperate with the Plaintiff in its efforts to locate all consumers eligible for restitution. The Agreement also provided that the Plaintiff could use any part of the restitution portion for payment to consumers or for educational purposes. The Debtor agreed to pay the restitution, penalty and costs in monthly installments of $600.00.[2] So long as he complied with the Agreement, the Plaintiff agreed to defer payment of the civil penalty, and if he fully paid restitution and costs, the penalty would be waived.

On October 12, 2005, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code. On January 20, 2006, the Plaintiff commenced the instant adversary proceeding.

## Discussion
## 11 U.S.C. § 523(a)(7)

Section 523(a)(7) of the Bankruptcy Code excepts from discharge certain debts "to the extent that such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a

---

[2]    The Plaintiff acknowledged receipt of $2,500.00 from the Debtor toward the restitution payments.

governmental unit, and is not compensation for actual pecuniary loss" (other than certain tax

penalties not applicable here).  11 U.S.C. § 523(a)(7).  In order for a debt to be excepted from

discharge under this section, it must satisfy three requirements: (1) it must be a debt for a fine,

penalty or forfeiture; (2) the debt must be payable to and for the benefit of a governmental unit;

and (3) it must not be compensation for actual pecuniary loss.  *Commonwealth of Kentucky,*

*Natural Resources and Environmental Protection Cabinet v. Seals*, 161 B.R. 615, 618 (D. W.D.

Va. 1993); *Attorney Grievance Comm'n. of Md. v. Smith (In re Smith)*, 317 B.R. 302, 306

(Bankr. D. Md. 2004).

### *Debt for Fine, Penalty or Forfeiture*

Debt is defined by the Bankruptcy Code as a liability on a claim.  11 U.S.C. § 101(12).

The term "claim" is defined by the Bankruptcy Code as:

> "(A)    right to payment, whether or not such right is reduced to
> judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,
> disputed, undisputed, legal, equitable, secured or unsecured;
>
> (B)    right to an equitable remedy for breach of performance
> if such breach gives rise to a right to payment, whether or not such right to
> an equitable remedy is reduced to judgment, fixed, contingent, matured,
> unmatured, disputed, undisputed, secured or unsecured."

11 U.S.C. § 101(5).

Restitution, penalties and costs like those set forth in the Agreement constitute a claim

against the Debtor, and are therefore debts for the purpose of Section 523(a)(7).  *See Kelly v.*

*Robinson*, 479 U.S. 36, 52, 107 S. Ct. 353 (1986) (Section 523(a)(7) is broadly applied to all

criminal and civil penalties, even those that provide restitution to injured private citizens); *U.S.*

*Dept. of Housing & Urban Dev. v. Cost Control Marketing & Sales Mgt. of Va., Inc.*, 64 F. 3d

920, 928 (4th Cir. 1995) (disgorgement award measured by amount consumers had lost was

nondischargeable penalty).  A contingent or unmatured right to payment, such as an

indemnification or guaranty provision, is also a debt within the meaning of Section 523(a)(7).

*See Clayton v. Tenn. Dept. of Safety (in re Clayton)*, 199 B.R. 29, 33 (Bankr. W.D. Tenn. 1996)

(citing *In re Hemingway Transport, Inc.*, 954 F. 2d 1 (1st Cir. 1992) (the term "claim" is broad

enough to include a right to payment contingent on the occurrence or nonoccurrence of a

specified event, even if the triggering event occurs postpetition).  Certain remedies that cannot be

reduced to a right to payment, such as injunctive relief to prevent a debtor from committing

future wrongs, is not a "debt" that would be dischargeable.  *Sheerin v. Davis (in re Davis)*,

3 F. 3d 113, 117 (5th Cir. 1993).

      In determining whether the Plaintiff's particular fine or penalty satisfies the language of

Section 523(a)(7), courts look to the underlying purpose of the statute, in this case the Maryland

Consumer Protection Act.  *Suter v. District of Columbia*, 2005 U.S. Dist. LEXIS 26840 at *24

(D. Md. Nov. 7, 2005).  The purposes of the Maryland Consumer Protection Act are set forth

therein:

> "(b)    Purpose - (1) It is the intention of this legislation to set certain
> minium statewide standards for the protection of consumers across the State,
> and the General Assembly strongly urges that local subdivisions which have
> created consumer protection agencies at the local level encourage the function
> of these agencies at least to the minimum level set forth in the standards of this
> title.
>
> (2)    The General Assembly is concerned that public confidence in
> merchants offering goods, services, realty, and credit is being undermined,
> although the majority of business people operate with integrity and sincere
> regard for the consumer.
>
> (3)    The General Assembly concludes, therefore, that is should take
> strong protective and preventive steps to investigate unlawful consumer practices,

to assist the public in obtaining relief from these practices and to prevent these practices from occurring in Maryland.  It is the purpose of this title to accomplish these ends and thereby maintain the health and welfare of the citizens of the State."

Md. Comm. Code Ann. §13-102(b).

Based on the foregoing, the civil penalty and restitution portions of the Agreement are clearly debts for a fine, penalty or forfeiture under Section 523(a)(7) of the Bankruptcy Code. Further, the Debtor's agreement to post a surety bond and/or letter of credit is analogous to an indemnification situation in that the Plaintiff's right to payment is contingent upon the Debtor's decision to resume offering for sale and selling hearing aids to consumers.  Therefore, the posting or the surety bond and/or letter of credit are also debts for a fine, penalty or forfeiture under Section 523(a)(7) of the Bankruptcy Code.  However, the cease and desist provisions of the Agreement are injunctive in nature, designed to prevent the Debtor from engaging in any unfair or deceptive trade practices in the future.  They are therefore, not "debts" within the meaning of Section 523(a)(7), and are not dischargeable.

### Debt Payable to and for the Benefit of a Governmental Unit

The Bankruptcy Code defines governmental unit, in part, as a State or a department, agency, or instrumentality of a state.  11 U.S.C. § 101(27).  An agency or department is a governmental unit to the extent that it is carrying out some governmental function.  *Smith*, 317 B.R. at 307 n.3.

As demonstrated by the Maryland Consumer Protection Act set forth above, the Maryland General Assembly has empowered the Consumer Protection Division to carry out its stated purpose under the Act.  The Plaintiff is therefore a governmental unit for purposes of Section 523(a)(7).

-8-

### _Debt Not Compensation for Actual Pecuniary Loss_

If the primary purpose for the debt is penal in nature, i.e., if it is imposed on a person in order to punish conduct or to protect the public through deterrence or rehabilitation, then the debt is not compensation for pecuniary loss. _HUD v. Cost Control Marketing_, 64 F. 3d at 928. The pecuniary loss provision refers to the government's loss. _Id._ Therefore, even if some or all of the restitution or other penalty may be disbursed to consumers, and even if such penalties are based on some measurable damage amount suffered by consumers, the debt will be nondischargeable. _See Id._ at 927 (disgorgement remedy was based on amount of loss to consumers, though no obligation was imposed on HUD to disburse it to them); _Seals_, 161 B.R. at 621 (penalties may be assessed without regard to actual damages, nor are funds collected required to be used to mitigate damages); _Smith_, 317 B.R. at 312 (mere fact that a penal sanction is calculated based on actual costs does not by itself transform a penalty into compensation for pecuniary loss); _Suter_, 2005 U.S. Dist. LEXIS 26840 at *25-26 (overall goal of consumer protection is bolstered by restitution awards imposed as a deterrent, therefore restitution is penal and not compensatory even if private individuals benefit from it).

### 11 U.S.C. § 525(a)

While not addressed by the Plaintiff in its Motion, in the Counterclaim [5], the Debtor vaguely alluded to some discriminatory effect the Agreement has on him. The Debtor states in the Counterclaim that: "... with the agreement being linked to his probationary status in respect to his occupational licensure thus rendering the 'agreement' not a voluntary nor fully informed, nor without hardship, nor clear as to the full legal effect and consequences of default type of situation, and otherwise linking his occupational licensure and status of being able to pursue his livelihood to his impecunious state, inappropriately attempts to visit consequences upon him

arising out of his status as a Debtor..."  *See* Counterclaim [5], p. 3.  The Debtor's concern that the Agreement interferes with his ability to obtain or maintain a professional or business license because he is a debtor warrants some discussion in this Memorandum Decision.

Section 525(a) of the Bankruptcy Code provides, in relevant part, that:

> "... a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employ-ment to, terminate the employment of, or discriminate with respect to employ-ment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act..."

11 U.S.C. § 525(a).

Placing conditions on a debtor before a license will be renewed or granted based on past conduct of the debtor is not discriminatory.  *See Geiger v. Commonwealth of Penn. (In re Geiger)*, 143 B.R. 30, 33 (D. E.D. Pa. 1992) (requiring debtor to pay fee to restore her driver's license was not discriminatory; it was a fee assessed on anyone in the state who voluntarily chose to reinstate a previously revoked or suspended license).  The Agreement requires the Debtor to cease and desist from offering for sale and selling hearing aids to consumers in Maryland through American Hearing Centers, Inc. or any other entity in which he has an ownership interest unless he either posts a bond or provides to the Plaintiff a letter of credit or cash deposit.  *See* Agreement, ¶6.  The Plaintiff is not conditioning or limiting the Debtor's ability to "pursue his livelihood" because he is in bankruptcy.  It is placing a condition on the Debtor because he has engaged in unfair and deceptive trade practices in violation of the Maryland Consumer Protection Act.

-10-

**Conclusion**

The Debtor voluntarily entered into the Agreement with the Plaintiff in order to resolve claims pending against him for violations of the Maryland Consumer Protection Act. The provisions of that Agreement clearly set out that the restitution and civil penalties are to be paid to the Plaintiff, and may be paid to consumers, held in trust for payment to consumers or used for educational programs. The Agreement also provides for payment to the Plaintiff of a surety bond or letter of credit should the Debtor resume operations in Maryland. These amounts are debts for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit and not compensation for pecuniary loss. Further, the cease and desist provisions of the Agreement are designed to deter future improper conduct on the part of the Debtor and do not interfere with his ability to work or discriminate against him solely because he is a debtor. The Court also finds, as acknowledged by the Plaintiff, that the $1,000.00 for the Plaintiff's costs of conducting the claims process and investigation constitutes compensation for pecuniary loss of the government and therefore does not satisfy the third requirement of Section 523(a)(7).

Accordingly, for the foregoing reasons, the Court finds that there is no genuine issue of material fact and that the Plaintiff is entitled to judgment as a matter of law. The debts owed to the Plaintiff under the Assurance of Discontinuance for restitution and the civil penalty are deemed nondischargeable pursuant to Section 523(a)(7) of the Bankruptcy Code. An Order will be entered contemporaneously with this Memorandum.

cc:    Debtor
       Debtor's Counsel - David M. Thomas, Esq.
       Plaintiff
       Plaintiff's counsel - Lauren R. Calia, Esq.
       U.S. Trustee
       Chapter 7 Trustee